UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

QUENNEL JACKSON

    Plaintiff,

v.

                                   Case No. 4:25-cv-218-AW-MAF

GT TECHNOLOGIES, INC.

    Defendant.
_____/

## DECLARATION OF JASON FELGER

1. My name is Jason Felger. I am over the age of 18 and competent to give this Declaration. All information contained herein is based upon my personal knowledge.

2. I am a White Male.

3. I am a former employee of GT Technologies, Inc. ("GT"). I was employed at GT from December 2021 until [insert end date]. While at GT, I was the Facilities and Maintenance Manager at GT's Tallahassee location.

4. I reported directly to the Plant Manager, Dave LaVieri.

5. I also had a lead, James White.

6. While at GT, I was Quennel Jackson's ("Plaintiff") direct supervisor. Plaintiff reported to both me and Mr. White.

7. As the Facilities and Maintenance Manager, my general duties included overseeing the maintenance team on both production maintenance and facility maintenance.

8. This included overseeing the implementation and use of our daily work order system, Computerized Maintenance Management Software ("CMMS").

9. The CMMS database tracks work in real-time, and provided real-time metrics for the department's performance.

10. Employees are trained on the CMMS system and expected to complete documentation in real-time upon the completion of the work.

11. GT maintains a daily workflow management process to guide technicians as to the work orders that must be completed daily.

12. The daily process is memorialized in the Mandatory Flow of Work Order Steps/Processes, which is a document distributed to employees following training that explains how a work order is entered from start to finish, and that reiterates the importance of the steps being completed in real-time. All employees in the Maintenance Department, including Plaintiff, were trained on the CMMS and the Mandatory Flow of Work Order Steps/Process documents.

13. By August 2023, approximately a year after the CMMS training was provided, there were no indications that Plaintiff did not understand GT's expectation to document work into the CMMS system at the time work is completed.

14. As Plaintiff's supervisor, until August 2023, I did not give Plaintiff any formal performance warning notices or disciplinary actions. Rather, me and Plaintiff had occasional informal verbal discussions about areas to improve his performance between August 2022 and August 2023.

15. On Tuesday, August 22, 2023, I noticed that I had not seen Plaintiff throughout the day, so I asked Plaintiff how he spent his day

16. During that conversation, Plaintiff said that he had worked on two restroom assignments that day. I asked what else Plaintiff has been doing during his shift, as each restroom assignment should have only taken about 30 minutes, and Plaintiff had been at work for seven hours.

17. Plaintiff stated that he had spent his day writing up work orders from work that had been completed on Saturday, August 19, 2023. I found this odd, as completing paperwork from the prior weekend's shift should not have taken hours, but rather about five minutes per document.

18. Based on the prior informal performance discussions and this latest concern, I issued Plaintiff a Performance Warning Notice on August 23, 2023.

19. I drafted it in the manner that I did because, at that time, when I had viewed the CMMS system, it only showed Plaintiff had completed one hour of work scope (related to the two restroom assignments) on August 22, 2023. I was

unaware of the existence of any other work orders from that day at the time the discipline was issued.

20. A few days later, Erin Wade, Human Resources Manager at the plant, asked me to pull the CMMS security log data and work orders for twelve work orders.

21. When Ms. Wade asked me to pull the security log, I did not know the reason for her request.

22. After pulling the log, Ms. Wade and I reviewed the log and discovered that Plaintiff had logged into the CMMS on August 19, 2023 and successfully created and edited work orders.

23. However, after reviewing all twelve work orders, Ms. Wade and I determined that certain work orders that Plaintiff had said he worked on actually had no involvement from Plaintiff, and that there were several date discrepancies associated with their creation versus work performance.

24. I then discussed Plaintiff's actions with Ms. Wade and we found that his actions (falsely representing who performed work, and when the work was completed) violated company policy.

25. Because Plaintiff submitted a falsified document (i.e., the list of work orders that did not correlate with work he performed or correct dates on which he claimed the work) to Human Resources, and given the Associate Conduct Policy,

Ms. Wade and I recommended Plaintiff's termination to the plant manager, Dave LaVieri.

26. While my original concern with Plaintiff's work was that there wasn't a full scope of work conducted in an eight-hour shift (August 22, 2023), which resulted in me issuing Plaintiff the Performance Warning Notice, my concerns had now shifted after reviewing Plaintiff's list and the CMMS logs as there was such a disconnect between the records and the story from Plaintiff.

27. I had no reason to doubt that the company records accurately reflected the work that was performed and documented and the decision to terminate Plaintiff's employment reflected the honest belief that he falsified documents during the investigation process.

28. Importantly, data on the CMMS security log cannot be manipulated in any way, even at an administration level, as it is a record of what occurs in the system.

29. Additionally, it is impossible to perform work on a work order that hasn't yet been created, unless an individual changes the date to erroneously reflect that work has been performed.

30. During Plaintiff's employment, Plaintiff had never complained to me of any discriminatory or retaliatory behavior from any employee at GT.

31. This includes any behavior such as stealing tools or moving chairs.

32. At one point I did request that Mr. White remove all chairs in the workshop to help correct productivity concerns, but this did not only impact Plaintiff, and it was not done for a discriminatory reason.

33. I did not recommend Plaintiff's termination for any retaliatory or discriminatory reasons.

34. During Plaintiff's employment, I was not aware that he was half Colombian.

35. I recommended Plaintiff's termination solely because he violated the Associate Conduct Policy by falsifying records during an investigation.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the forgoing information contained in this declaration is true and correct.

Dated this _____ of February, 2026.   12-Feb-2026

Signed by: *Jason Felger*

Jason Felger

6