**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

QUENNEL JACKSON

    Plaintiff,

v.

                                                  Case No. 4:25-cv-218-AW-MAF

GT TECHNOLOGIES, INC.

    Defendant.
_____/

**DEFENDANT GT TECHNOLOGIES, INC.'S**
**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant GT TECHNOLOGIES, INC. ("GT," the "Company," or "Defendant") respectfully submits this reply in support of its Motion for Summary Judgment (the "Motion") (ECF No. 34). Plaintiff QUENNEL JACKSON ("Plaintiff") filed a Response in Opposition to the Motion (the "Opposition") (ECF No. 36). Plaintiff's Opposition underscores precisely why summary judgment is warranted. Rather than marshaling evidence that creates a genuine dispute of material fact, Plaintiff offers a response riddled with internal contradictions and glaring inconsistencies with his own prior sworn deposition testimony and record evidence. Perhaps more tellingly, Plaintiff's Opposition demonstrates that he either misunderstands or simply refuses to acknowledge the legitimate, non-discriminatory, and non-retaliatory reason for his termination. This Court should not

permit Plaintiff to manufacture a triable issue of fact through contradictory assertions and a willful disregard for the actual basis of the employment decision at issue and should grant Defendant's Motion.

## I. PLAINTIFF'S FAILURE TO COMPLY WITH LOCAL RULES

As an initial note, Plaintiff's Opposition should be stricken, and sanctions should be imposed against Plaintiff and his counsel for their blatant violations of this Court's Local Rules. Local Rule 56.1(C) unambiguously limits an opposing memorandum on a summary judgment motion to 8,000 words. Plaintiff's Opposition is 11,690 words (over forty percent over the permissible limit) in flagrant disregard of the Court's requirements. Compounding this violation, Local Rule 7.1(F) expressly provides that, while disfavored, the Court may allow a longer memorandum if the party obtains <u>before</u> filing the longer memorandum. Plaintiff neither sought nor obtained leave from this Court before filing his excessively long brief.

Such cavalier disregard for procedural requirements imposes undue burdens on Defendant and wastes judicial resources. Under Local Rule 41.1, when a party violates an applicable rule or court order, the Court may "strike a pleading, dismiss a claim, enter a default on a claim, take other appropriate action, or issue an order to show cause why any of these actions should not be taken." Defendant respectfully urges the Court to exercise its authority under Local Rule 41.1 and strike Plaintiff's

Opposition, or in the alternative, disregard all content beyond the 8,000-word limit, and to sanction Plaintiff and Plaintiff's counsel for their willful noncompliance with the Local Rules.

## II. STATEMENT OF FACTS

Plaintiff's Opposition uses twenty-six pages (and over 8,000 words) to attack clearly established record testimony, while providing nothing more than vague, self-serving, contradictory, and conclusory statements to manufacture disputed material facts. While Plaintiff may re-cast facts as "disputed," he fails to present record evidence to dispute the material facts. Responding to every paragraph would require more space than is allotted in this reply, but some glaring examples are outlined below:

- Plaintiff claims he voiced concerns to supervisors and HR (ECF 36 at 2) but admits he didn't report incidents because he didn't want to "stoop to that level" and "desire[d] to keep the peace." (ECF 36 at 3, 22, 26).
- Plaintiff repeatedly suggests that other employees violated company policy or "did the same and worse, yet were not disciplined," (*see e.g.* ECF 36 at 3, 4, 5, 7, 9, 11, 26, 26), but provides no record evidence or details to support such claims.
- Plaintiff claims GT did not employ any minorities during an undefined "relevant time period" but then says that minorities were fired soon after being hired (ECF 36 at 6), suggesting that GT <u>did</u> employ other minorities, as confirmed by Ms. Wade (ECF 33-3 ¶ 8).
- Plaintiff admits that Mr. Felger spoke with him at the end of his shift on August 22, 2023, and admits that during that conversation, he only mentioned working on two restroom assignments that day (ECF 36 at 8). He then admits that he received the Performance Warning Notice ("PWN") on August 23, 2023 (ECF 36 at 9), but then in the next paragraph contradicts himself and states he received the notice at 9:45AM on August 22, 2023. (ECF 36 at 10). He then disputes the basis

3

- of the PWN (ECF 36 at 9) but admits that when it was written, there were no other work orders in the system. (ECF 36 at 10).
- Plaintiff argues the PWN itself "implies that discrimination may be inferred from the very fact that Jackson was disciplined, despite completing the listed work orders." (ECF 36 at 12). This assertion makes no logical sense as GT did not know about the list of work orders he claimed credit for until <u>after</u> the PWN was issued, and Plaintiff admits they were not in the system when it was issued. (ECF 36 at 10).
- Plaintiff suggests that GT manipulated records, either altering paperwork after the fact or that work orders "eventually came to light" after his termination. (ECF 36 at 19, 25). Once again, Plaintiff has no evidence to support such a serious allegation. Additionally, the date stamps on the bottom of the work orders retrieved during the investigation show they were printed on August 25, 2023. (*See e.g.* ECF 33-20 to 33-28).

## III. LEGAL ARGUMENT

### A. Plaintiff's Statements Alone are Insufficient to Defeat Summary Judgment

To defeat summary judgment, "a mere scintilla of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Baxter v. Roberts*, 54 F.4th 1241, 1253 (11th Cir. 2022) (internal citations omitted). While "a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment . . . unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Thomas v. Sheriff of Jefferson Cty.*, No. 22-13875, 2023 U.S. App. LEXIS 26637, at *5 (11th Cir. Oct. 6, 2023) (citing both *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) and *Anthony v. Georgia*, 69 F.4th 796, 804 (11th Cir. 2023) (internal citations and quotations omitted)).

4

Here, Plaintiff attempts to create disputed issues of material fact by citing only his own deposition testimony. Plaintiff presents no evidence other than vague, speculative, or conclusory claims, which do not create a substantial conflict in evidence to create a triable issue of fact. As such, GT's Motion should be granted.

**B.     Plaintiff's Discrimination Claims Fail as a Matter of Law**

Plaintiff claims he can establish a *prima facie* case of discrimination, but he cannot establish he met GT's legitimate expectations at the time of his termination, nor has he established valid comparators.

**1.     Plaintiff Was Not Meeting GT's Legitimate Expectations**

First, Plaintiff contends that he was meeting GT's legitimate expectations at the time of his termination, arguing that any "perceived discrepancies" in his CMMS entries can be attributed to "normal company-wide practice of non-contemporaneous timekeeping." (ECF 36 at 29). First, this argument mischaracterizes the basis for Plaintiff's termination. GT did not terminate Plaintiff for delayed timekeeping; rather, GT terminated Plaintiff for lying and submitting falsified information (the rebuttal) to Human Resources during an investigation – a clear violation of the Associate Conduct Policy. (ECF 33-3 ¶¶ 32, 34; ECF 33-4 ¶ 25; ECF 33-30).

Second, the undisputed record shows that when Plaintiff submitted his rebuttal to the Performance Warning Notice, he provided a list of twelve work orders that he claimed to have completed on August 19 or 21, 2023. (ECF 33-1 at 107:2-22; ECF

5

36 at 14). Upon investigation, GT discovered significant discrepancies between Plaintiff's representations and the actual CMMS records, including work orders created <u>after</u> the dates Plaintiff claimed to have worked on them. (ECF 33-3 ¶ 31; ECF 33-4 ¶ 23). Plaintiff's own deposition testimony confirmed these discrepancies, as he admitted that certain work orders represented work completed on dates different from what he initially represented to Ms. Wade, which he again confirms in his Opposition. (*See e.g.* ECF 36 at 17).

Plaintiff's attempt to deflect by claiming that "everybody can go in and enter anybody's work order" (ECF 36 at 8) undermines his position. If others could edit his work orders, as Plaintiff suggests, the logical conclusion is that Plaintiff bears responsibility for verifying the accuracy of the information he submitted to Human Resources – which he failed to do. In any event, Plaintiff offers <u>no evidence</u> that anyone tampered with his records; he simply speculates that "something was edited." (ECF 36 at 8). "Conclusory allegations and speculation are insufficient to create a genuine issue of material fact" to defeat summary judgment. *Glasscox v. Argo*, 903 F.3d 1207, 1213 (11th Cir. 2018).

### 2. Plaintiff Fails to Present Valid Comparators

Plaintiff's Opposition contends that "the very fact that only Plaintiff was terminated/disciplined for engaging in a common practice at GT proves that he was treated differently than all employees." (ECF 36 at 30). Again, Plaintiff was <u>not</u>

6

terminated for non-contemporaneous timekeeping. Plaintiff's comparator argument fails because he conflates delayed timekeeping with falsification during an investigation. (ECF 36 at 4).

To establish a valid comparator, Plaintiff must identify someone who engaged in "nearly identical" conduct but was treated more favorably. *Lewis v. City of Union City*, 918 F.3d 1213, 1224 (11th Cir. 2019). Plaintiff suggests that "all maintenance department employees" are valid comparators (ECF 36 at 3) yet fails to explain how they are "nearly identical." Plaintiff has not, and cannot, name any employee—of any race, color, or national origin—who submitted falsified information to Human Resources during an investigation but was not terminated.

Plaintiff's Opposition repeatedly suggests that other employees violated Company policy but were not disciplined. *See e.g*. ECF 36 at 3, 4, 5, 9, 11, 26, 27. Plaintiff has provided no record evidence to support those assertions. Even if Plaintiff's assertions that others did not contemporaneously enter work orders into the system were true (of which there is no record evidence), these unnamed individuals are not valid comparators, as none lied to Human Resources during a Company investigation.

Plaintiff's own deposition testimony is fatal to his comparator argument. When asked directly whether employees were treated better because of race, color, or national origin, Plaintiff testified: "No. We was treated equal. Everybody got

7

treated fair, you know, as far as performing work." (ECF 33-1 at 155:11-16; *see also* ECF 33-1 at 156:6-11). Plaintiff now attempts to recast his testimony by claiming he "misunderstood the question," (ECF 36 at 24) but the plain language of his response at deposition makes it clear that he understood the questions, and at the end of his deposition, Plaintiff explicitly testified that he understood all the questions asked (ECF 33-1 at 220:21-221:24).[1]

Finally, Plaintiff suggests that his termination "incentivized GT to start enforcing this 'policy' so that [GT's] discrimination would be less obvious." (ECF 36 at 31, citing "ECF 33-1 generally"[2]). GT has never suggested that the three individuals terminated between July and December 2023 (*i.e.* both before and after Plaintiff's termination) for falsification of company records or reports are valid comparators (which is Plaintiff's burden to establish anyway); rather, the fact that GT has terminated others under the policy shows that the policy was consistently enforced.[3] (ECF No. 33-3 ¶ 39).

### 3. Plaintiff Cannot Establish Discrimination Under the Convincing Mosaic Theory

---

[1] Plaintiff has not provided an affidavit or any sworn statement to suggest otherwise, which violates Fed. R. Civ. P. 56(c).
[2] Citing Plaintiff's deposition generally does not comply with Local Rule 56.1(F), which requires pinpoint citations to record evidence.
[3] Ms. Wade previously testified that she was unaware of any other employee committing the exact same infraction as the Plaintiff but testified that the Company has enforced the policy consistently. (ECF 33-2 at 211:19-212:6).

Plaintiff claims he can prevail based on the convincing mosaic theory, pointing to two pieces of alleged evidence of discriminatory intent: (1) a comment allegedly made by James White about minorities in the workplace; and (2) a wooden statue that allegedly appeared on Plaintiff's desk on the day of his termination. (ECF 36 at 20-21). Neither is sufficient to overcome summary judgment.

Regarding the alleged comment by Mr. White, Plaintiff admits he did not report this comment to Human Resources (ECF 36 at 21), and Mr. White has denied ever making such a statement. (ECF 33-6 ¶ 10). More critically, Mr. White was not a decision-maker in Plaintiff's termination; the decision was made by Ms. Wade, Mr. Felger, and Mr. LaVieri. (ECF 33-3 ¶ 34). A stray remark by a non-decision maker is insufficient to defeat summary judgment. *See Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1267-68 (11th Cir. 2010).

As for the statue, the undisputed evidence shows it was a carved wooden figurine holding a fish that had been in the shop for years as a desk decoration. (ECF 33-3 ¶¶ 43-44, Exhibit A; ECF 33-2 at 236:12-18). Plaintiff's subjective perception that the statue was discriminatory is insufficient to create a triable issue of fact. *See Ray v. Tandem Computers*, 63 F.3d 429, 434 (5th Cir. 1995). Neither Ms. Wade nor Mr. LaVieri have any recollection of being shown the statue by Plaintiff or observing anything around the statue's neck, and these decision-makers were unaware that

9

Plaintiff believed the statue to be discriminatory during his employment. (ECF 33-3 ¶ 46; ECF 33-5 ¶ 14).

### C.  Plaintiff's Retaliation Claim Fails

First, Plaintiff's Opposition suggests "he had openly discussed feeling discriminated against on multiple occasions." (ECF 36 at 31). There is no record evidence to suggest Plaintiff complained to Human Resources about any alleged discriminatory treatment before he submitted his rebuttal, and Plaintiff's own Opposition states he did not report concerns "due to a desire to keep the peace and focus on his job" and because he did not want to "stoop to that level." (ECF 36 at 3, 26). The only complaint made by Plaintiff during his employment supported by record evidence is the submission of the rebuttal on August 25, 2023.

Second, Plaintiff cannot establish a causal connection between the submission of his rebuttal and his termination. Plaintiff's intervening misconduct (submitting falsified information during the Human Resources investigation) severed any causal inference created by temporal proximity. The Eleventh Circuit has consistently held that the intervening discovery of employee misconduct can sever the causal inference created by close temporal proximity. *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1309 (11th Cir. 2023). Here, the Human Resources investigation that began as a review of Plaintiff's rebuttal revealed that Plaintiff had submitted a falsified document to Human Resources. (ECF 33-3 ¶ 33; 33-4 ¶ 26). This

10

discovery—not Plaintiff's discrimination complaint—prompted the termination decision. *Id.*

Plaintiff argues that "the alleged 'falsification' in his rebuttal does not constitute intervening behavior severing causation, because Plaintiff maintains that there was no such 'falsification' or misconduct." (ECF 36 at 32). But the question is not whether Plaintiff <u>actually</u> falsified records; the question is whether GT <u>honestly believed</u> that he did. There is <u>nothing</u> in the record other than Plaintiff's own self-serving statements to suggest that decisionmakers did not honestly believe Plaintiff violated their policies. *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999) ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct."). In contrast, the decision-makers testified that they believed Plaintiff falsified documents during the investigation process, and they had no reason to doubt the company records. (ECF 33-3 ¶ 35; ECF 33-4 ¶ 27; ECF 33-5 ¶ 10). Plaintiff offers no evidence that this belief was dishonest or fabricated—only his own self-serving disagreement with the conclusion.

### D. Plaintiff Does Not Demonstrate GT's Legitimate, Non-Discriminatory and Non-Retaliatory Reason for Termination is Not Pretextual

GT presented a legitimate, non-discriminatory, and non-retaliatory reason for Plaintiff's termination, and Plaintiff has not presented that reason is pretextual.

Plaintiff's contention that "any perceived falsification can be attributed to a combination of normal company practice of non-contemporaneous timekeeping, as well as the ability of others to edit others' CMMS entries" (ECF 36 at 34) is insufficient to establish pretext. First, Plaintiff offers no evidence that anyone edited his records. Second, even if delayed timekeeping was common, that does not excuse submitting a list to Human Resources that materially misrepresents when work was performed. Third, GT's belief that Plaintiff falsified records need only be honest, not necessarily correct. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) ("For an employer to prevail the jury need not determine that the employer was correct in its assessment of the employee's performance; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory.").

Plaintiff may not agree with GT's conclusion that he lied during a Company investigation and presented false information, but Eleventh Circuit precedent has long established that an employer "may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a *discriminatory* reason." *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984) (emphasis added). Plaintiff "cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000).

Finally, the decision-makers all testified that they did not know Plaintiff's national origin was Columbian. (ECF 33-3 ¶ 48; ECF 33-4 ¶ 34; ECF 33-5 ¶ 16). While Plaintiff disputes this, he offers no evidence to suggest otherwise. An employer cannot discriminate based on a characteristic it does not know about. *See Nieves v. Metro. Dade Cnty.*, 598 F. Supp. 955, 965 (S.D. Fla. 1984).

### E. Plaintiff Fails to Present a Convincing Mosaic of Circumstantial Evidence

Plaintiff argues that even if he cannot establish a *prima facie* case, he has presented a "convincing mosaic of circumstantial evidence." (ECF 36 at 35). As demonstrated above, Plaintiff has failed to do so. The timing of his termination is explained by the discovery of misconduct during the investigation—not by his discrimination complaint. Plaintiff has identified no ambiguous statements by decision-makers and no systematic pattern of better treatment of similarly situated employees. And Plaintiff has offered nothing more than speculation and disagreement to suggest that GT's stated reason was pretextual.

Critically, Plaintiff's circumstantial evidence, even when considered collectively, is insufficient to raise an inference of discriminatory intent. Plaintiff's mere feeling or perception he was discriminated against, without credible supporting evidence, cannot defeat summary judgment. *See St. Hilaire v. Pep Boys*, 73 F. Supp. 2d 1350, 1360 (S.D. Fla. 1999).

## IV. CONCLUSION

Plaintiff's Opposition fails to create a genuine dispute of material fact on any element of his discrimination or retaliation claims. Plaintiff refuses to acknowledge that his termination was for one reason – his own decision to lie to Human Resources during an investigation that <u>he requested</u>. Plaintiff's self-serving speculation and disagreement with GT's business judgment are insufficient to survive summary judgment.

**WHEREFORE**, Defendant GT TECHNOLOGIES, INC. respectfully requests that this Court grant summary judgment for Defendant and grant all other just and equitable relief.

## CERTIFICATE OF COMPLIANCE REGARDING WORD COUNT

Pursuant to Local Rules 56.1 and 7.1, the undersigned certifies this Reply (excluding the case caption, this Certificate, the signature block, and Certificate of Service) is 3,140 words, according to the word-processing system used to prepare filing.

Dated:  March 12, 2026

Respectfully submitted,

/s/ Elizabeth Jozsi
Elizabeth Jozsi
Florida Bar No: 119428
Sarah Kuehnel
Florida Bar No: 124765
OGLETREE, DEAKINS, NASH, SMOAK
   & STEWART, P.C.
100 North Tampa Street
Suite 3600
Tampa, FL 33602
Telephone: 813.221.7239
Facsimile: 813.289.6530
elizabeth.jozsi@ogletree.com
sarah.kuehnel@ogletree.com
Secondary emails:
angie.jackson@ogletree.com
melissa.salazar@ogletree.com
susan.urso@ogletree.com
TAMdocketing@ogletree.com

*Attorneys for Defendant GT TECHNOLOGIES, INC.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 12, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to:

Emanuel Kataev, Esq.
David Pinkhasov, Esq.
Consumer Attorneys, PLLC
6829 Main Street
Flushing, NY 11367
Telephone:  718.412.2421
Facsimile:  718.489.4155

ekataev@consumerattorneys.com<br>dpinkhasov@consumerattorneys.com

*Attorneys for Plaintiff*

**I FURTHER CERTIFY** that to the best of my knowledge there are not any non-CM/ECF participants that require notification of this response via U.S. Mail.

*/s/ Elizabeth Jozsi*  
Attorney

96116260.v4-OGLETREE