IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

QUENNEL JACKSON,

    **Plaintiff,**

v.                                   **Case No. 4:25-cv-218-AW-MAF**

GT TECHNOLOGIES, INC.,

    **Defendant.**

_____/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Plaintiff Quennel Jackson filed this Title VII action against his former employer, GT Technologies, Inc. He alleged he was terminated based on race, color, or national origin (Count I) and in retaliation for his complaints about discrimination (Count II).

GT moved for summary judgment on both claims. Having considered the motion (ECF No. 34), Jackson's response (ECF No. 36) and GT's reply (ECF No. 37), I now grant the motion.[1]

---

[1] Parties must cite "particular parts of materials in the record" to support their factual assertions. Fed. R. Civ. P. 56(c)(1)(A). The court may—but need not— consider other record materials. *Id.* R. 56(c)(3). As a matter of discretion, I have declined to consider record materials not cited in the parties' briefs and not addressed in this order.

1

## I.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when it might affect the outcome. *Id.* The court's role is not to weigh the evidence, but to determine whether there are genuine issues for trial. *Id.* at 249.

## II.

The parties agree about some basic facts. There are other facts about which the parties do not agree. Because Jackson is the nonmoving party, I must consider the record in the light most favorable to him. What follows are the facts viewed in that way. These may not be the real facts, *see Farrow v. West,* 320 F.3d 1235, 1239 n.2 (11th Cir. 2003); they instead reflect the most favorable view of the record for Jackson.

Jackson worked at GT from 2017 to 2023. On Saturday, August 19, 2023, he worked an extra shift. The company uses a "Computerized Maintenance Management Software" (CMMS) program to track employee tasks. Employees (including Jackson) must document each task upon completion. Jackson had issues with the CMMS during the August 19 shift. As a result, he did not

contemporaneously enter all the work he performed. ECF No. 33-1 at 73:15-24. Nonetheless, the CMMS showed that he still created some entries during that shift. ECF No. 33-17. He also created some entries on August 22 for tasks completed on August 19. *See* ECF Nos. 33-20, 33-21, 33-22. A few days after that shift, the maintenance manager (Jason Felger) gave Jackson a "Performance Warning Notice," saying "7 hrs to conduct 1hr work scope (8hr shift not captured in documentation)." ECF No. 33-15. Jackson believed that the performance warning was unwarranted, *see, e.g.*, ECF No. 33-1 at 87:7-25; *id.* at 93:19-94:9, and he refused to sign the notice.

Jackson went to HR manager Erin Wade, who gave him an opportunity to rebut the performance warning. Wade asked him for a list of work orders from tasks he completed during the shift but did not enter until August 22. In response, Jackson provided a list of twelve work orders, and he told her he completed half on August 19 and half on August 21. *Id.* at 107:2-110:23. Wade drew a line on the list to separate the dates.[2] *Id.*

The list Jackson gave Wade included a note that said, "[t]his shows me the maintenance supervisor is discriminating me [sic] of my work ethics. . . . This

---

[2] There appears to be a dispute about whether Jackson initially told Wade he completed all twelve work orders on August 19. That dispute is immaterial, and both sides agree that at some point Jackson told Wade that the work orders were from two different days.

discriminating a black employee that works as a maintenance fabrication welder engineer of GT Technologies!" ECF No. 33-16. Wade reviewed the CMMS security log for the twelve work orders Jackson provided. The log indicated that two of the work orders were assigned to other employees and did not show any tasks Jackson completed. ECF Nos. 33-18, 33-23. Additionally, the CMMS indicated that one of the listed work orders was created by Jackson on August 19 but did not show any completed tasks. ECF No. 33-19.

Wade and Felger recommended Jackson's termination. Their stated reason was that the CMMS did not reflect that Jackson had performed any work on three of the work orders he claimed as his. ECF No. 33-30. The plant manager, David LaVieri, reviewed the records Wade and Felger provided and terminated Jackson on September 5, 2023. ECF No. 33-5 ¶¶ 7-9. Earlier that same day, Jackson found a small figurine on his desk. He reported finding the figurine to Wade and LaVieri and showed it to them before he was fired. ECF No. 33-1 at 137:15-138:5.

Jackson testified that the figurine is a "statue of a black man holding a noose in his arm with . . . a hat on his head." ECF No. 33-1 at 139:22-140:1. The record contains a picture of the figurine, ECF No. 33-3 at 13-16, and Jackson confirmed that the picture was of the statue as he found it on his desk, ECF No. 33-1 at 138:14-17, 141:8-10. The picture blatantly contradicts Jackson's description of the figurine, and for purposes of summary judgment, I view the figurine as it is depicted in the

4

picture. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (noting that when a party tells a story that "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"); *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) ("[W]here an accurate video recording completely and clearly contradicts a party's testimony, that testimony becomes incredible."). The figurine is a bronze-colored figurine of a smiling man holding a large fish and wearing a collared shirt with suspenders and a bucket hat that says "GT." ECF No. 33-3 at 13-16.

### III.

Title VII prohibits discrimination based on certain protected characteristics. 42 U.S.C. § 2000e-2(a). Jackson contends GT fired him because of his race, color, or national origin. Because Jackson points to no direct evidence to support his claim, he must rely on circumstantial evidence. *See Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023). To survive summary judgment with only circumstantial evidence, a party must either satisfy the *McDonnell Douglas* framework or present a "convincing mosaic"—that is, sufficient evidence from which a reasonable factfinder could infer intentional discrimination. *Id.* at 946.

The *McDonnell Douglas* route requires a comparator, and Jackson offers none. He asserts generally that "other employees violated Company Policy in the same and other ways, yet were not disciplined for same." ECF No. 36 at 3. But he

5

has not pointed to evidence to support this even as a general matter—let alone with a specific comparator "similarly situated in all material respects." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019). Thus, he cannot make out a prima facie case under *McDonnell Douglas*.

Turning to the so-called "convincing mosaic," Jackson can rely on evidence of "(1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Id.* (cleaned up). Jackson claims that non-contemporaneous timekeeping was common practice at GT and that he was the only employee disciplined. *See, e.g.*, ECF No. 36 at 30. But his testimony alone is not enough to create a dispute on this issue because there is no indication that he had personal knowledge of other employees' disciplinary records. Speculation about what other employees generally did and how GT responded is insufficient. Additionally, although Jackson focuses on his contention that non-contemporaneous CMMS entries were common, GT never contended it fired him for non-contemporaneous CMMS entries. GT's stated reason for the termination was that Jackson gave HR entries he had not worked on. Jackson offers no evidence (or even speculation) that other employees committed similar policy violations without consequence. And GT provided the HR manager's declaration that "GT terminated three employees

6

between July 2023 and December 2023 for falsification of company records or reports." ECF No. 33-3 ¶ 39. (Jackson says he "lacks knowledge or information sufficient to form a belief as to the truth of whether 'GT has terminated other employees for this kind of behavior in the past.'" ECF No. 36 at 19 (quoting GT's brief).)

Jackson's other efforts to show pretext are similarly unsuccessful. At least three of the CMMS work order entries on Jackson's list do not reflect that Jackson performed work on them. Jackson contends that the work order records are necessarily inaccurate because his list of work orders *did* reflect work he completed. But the question is not whether GT made the correct judgment when deciding to fire Jackson; the question is whether they had a discriminatory motive. *Jimenez v. U.S. Att'y Gen.*, 146 F.4th 972, 997 (11th Cir. 2025) ("An employer may act for a good reason or a bad reason so long as it is not an unlawful reason." (cleaned up)). That the GT decisionmakers chose to rely on the records in the CMMS does not suggest any improper motivation. Jackson's speculation that the work orders were altered in the CMMS system (either before or after his employment), ECF No. 33-1 at 159:4-7, does not create a dispute about what the records said when Wade, Felger, (and ultimately LaVieri) reviewed them.

Next, Jackson testified that James White made statements about his race on several occasions. For example, Jackson testified that White said "you got

everything going right, I mean, you act like us, you think like us and you talk like us. . . . [Y]ou just got one problem, you just got one thing, you know . . . ." ECF No. 33-1 at 98:11-21. And he testified that White said that in Florida "they don't have to hire a minority and keep you." *Id.* at 146:6-10. But because Jackson points to no evidence that White was involved in the decision to terminate him, this is not the kind of evidence that would permit a reasonable jury to conclude discrimination motivated the employment action. Last, as for Jackson's testimony that his chair and tools would sometimes go missing at work, he has not tied that to discriminatory animus or to a relevant decision maker.

In sum, GT is entitled to summary judgment on Count I.

## IV.

Jackson also alleges Title VII retaliation. "A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). As with the discrimination claim, a plaintiff relying on circumstantial evidence of retaliation can rely on the *McDonnell Douglas* framework or show a convincing mosaic. *See, e.g.*, *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1307 (11th Cir. 2023) (analyzing both).

As a threshold matter, Jackson must have opposed something he subjectively believed was unlawful, and his belief had to be objectively reasonable. *See Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010). Reporting the figurine to Wade and LaVieri does not constitute a protected activity. As explained above, what Jackson subjectively believes about the figurine does not match the photographic evidence. It was not objectively reasonable for Jackson to believe someone's placing that figurine on his desk violated Title VII. Thus, Jackson has no Title VII claim for retaliation based on his reporting the figurine.

GT treats the references to discrimination in Jackson's rebuttal letter as protected activity, so I will also. Still, Jackson has not pointed to evidence from which a reasonable jury could conclude he was fired because he mentioned discrimination in the rebuttal letter.[3] He appears to rely on the timing alone to support causation, but that is not enough here, where GT has presented a legitimate reason for Jackson's termination. *See, e.g.*, *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1341-42 (11th Cir. 2023) (concluding that "timing alone [wa]s not enough to show pretext" where employee "ha[d] not rebutted [employer]'s justification head

---

[3] The parties dispute whether Jackson informally complained of discrimination before the rebuttal letter. For purposes of summary judgment, his testimony that he did is sufficient. But ultimately it does not matter. Jackson does not point to any evidence of a causal connection between those earlier complaints and his termination.

on"); *Berry*, 84 F.4th at 1312 (11th Cir. 2023) ("[Employer]'s intervening discovery of misconduct fatally undermines the probative value of temporal proximity between her protected activity and her termination."). And, as with his discrimination claim, this claim cannot survive summary judgment based solely on Jackson's contention that the CMMS records must be wrong or his testimony speculating that the work order entries were altered.

GT is entitled to summary judgment on Count II.

## CONCLUSION

After GT provided evidence that it terminated Jackson for lawful reasons, Jackson had the summary-judgment burden of producing evidence from which a jury could conclude otherwise. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). He has not. Indeed, he says he "lacks knowledge or information sufficient to form a belief as to the truth of whether '[t]he decision to terminate Plaintiff's employment reflected the honest belief that he falsified documents during the investigation process.'" ECF No. 36 at 20 (alterations in original) (quoting GT brief). He denies he falsified records,

but he points to no evidence that the real reason for his termination was anything other than GT's belief that he did.

GT Technologies' motion for summary judgment (ECF No. 34) is GRANTED. The clerk will enter a judgment that says, "This case was resolved at summary judgment. Plaintiff's claims are all dismissed on the merits. Plaintiff shall recover nothing." The clerk will then close the file.[4]

SO ORDERED on April 29, 2026.

s/ *Allen Winsor*
Chief United States District Judge

---

[4] Plaintiff's motion to exceed the word limit (ECF No. 41) is GRANTED. The court considered Plaintiff's entire brief. However, Plaintiff should have obtained leave before filing an oversize brief, N.D. Fla. Loc. R. 7.1(F), rather than a month after the fact.